UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICHARD STATLER, D.C., individually
and on behalf of all others similarly
situated,

                           Plaintiff,

   -against-

DELL, INC., a Delaware corporation,

                           Defendant.
----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 10-3798

(Wexler, J.)

APPEARANCES:

HAGENS BERMAN SOBOL SHAPIRO LLP
BY: DAVID S. NALVEN, ESQ.
Attorneys for Plaintiff
55 Cambridge Parkway, Suite 301
Cambridge, Massachusetts 02142

HAGENS BERMAN SOBOL SHAPIRO LLP
BY: STEVE W. BERMAN, ESQ.
Attorneys for Plaintiff
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101

LEVETOWN & JENKINS, LLP
BY: MICHAEL P. LEWIS, ESQ.
Attorneys for Plaintiff
1 Metro Center
700 12th Street N.W., Suite 700
Washington, DC 20005

ALSTON & BIRD, LLP
BY: NELSON A. BOXER, ESQ.
Attorneys for Defendant

1

90 Park Avenue
New York, New York 10016

ALSTON & BIRD, LLP
BY: JANE FUGATE THORPE, ESQ.
Attorneys for Defendant
1202 West Peachtree Street NW
Atlanta, Georgia 30309-7000

WEXLER, District Judge

This is an action commenced by Plaintiff Richard Statler ("Plaintiff"), against Dell, Inc. ("Dell") alleging several causes of action arising out of the alleged malfunction of five Dell computers leased by Plaintiff in 2003. Plaintiff seeks to represent himself as well as a class of similarly situated individuals.

In a Memorandum and Order dated March 30, 2011, this court dismissed Plaintiff's claims of unjust enrichment and as any claim alleging a safety hazard. See Statler v. Dell, Inc., 775 F.Supp.2d 474 (E.D.N.Y. 2011). Plaintiff's remaining claims, those set forth pursuant to: (1) the Federal Magnuson Moss Warranty Act 15 USC § 2308(a)(c) ("MMWA"); (2) Section 2-314 of the New York Uniform Commercial Code ("UCC § 2-314"), and (3) Section 349 of the New York General Business Law ("Section 349"), were held to have been untimely. Id. at 482. The time barred claims were not, however, dismissed. Instead, the court allowed discovery to proceed to determine whether Plaintiff could save his untimely claims pursuant to principles of equity, and/or as based upon post-warranty fraudulent conduct. Id. at 483; 484-85.

Discovery is now complete. Arguing that Plaintiff can set forth no facts to raise a question of fact as to the timeliness of any remaining claim, Defendant moves, pursuant to Rule

56 of the Federal Rules of Civil Procedure, for summary judgment. For the reasons set forth below, the motion is granted and the complaint is dismissed.

## BACKGROUND

I.  Factual Background and Prior Proceedings

The facts set forth below are those agreed to in the parties' statements pursuant to Local Rule 56.1, and those developed during the discovery process.

In late 2003, Plaintiff leased with the option to purchase, five Dell Optiplex computers (the "Computers") directly from Dell for use in his chiropractic business. Accompanying the Computers was a limited warranty (the "Warranty"). Dell's responsibility for covered defects under the Warranty was limited to "repair and replacement."

Plaintiff's deposition testimony makes clear that he began to experience problems with the Computers soon after delivery. Thus, Plaintiff testified that the Computers never seemed to function properly, and he never got the use that he expected. Jennifer Jesia, Plaintiff's office assistant ("Jesia"), testified similarly, stating that it seemed as if the Computers were "always down."

Despite his continual dissatisfaction with the Computers, Plaintiff states that he was not in possession of information that would allow him to commence a lawsuit until 2010. In that year, the New York Times published an article discussing a 2007 lawsuit commenced against Dell alleging widespread problems with Dell's Optiplex line of computers. Plaintiff refers to the reading of the 2010 article as his "Eureka" moment which allowed him to pursue a lawsuit against Dell.

The record reveals several facts that occurred between the 2003 delivery of the

Computers and the 2010 New York Times article that are relevant to the disposition of this motion. First, in addition to Plaintiff's almost immediate and continuing dissatisfaction with the Computers' performance, there is reference to an internet blog article dated August 30, 2005, entitled "Dell Won't Recall Defective Motherboards." The articles stated that while Dell initially honored its warranty obligations with respect to Optiplex computers, those obligations were later breached.

In 2005, Dell publicly acknowledged problems with the Optiplex line of computers in its SEC Form 10-Q for the quarterly period ended October 2, 2005. That 2005 filing notes that during the referenced quarterly period, Dell recognized "a product charge of $307 million for estimated warranty costs of servicing or replacing certain Optiplex systems that include a vendor part that failed to perform to Dell's specifications." (Dell Form 10-Q at 9 n.(a)).

In 2006, problems experienced by Plaintiff led Dell to replace the Computers' motherboards. Dell's conduct with respect to these particular repairs is supported by deposition testimony and is well documented in the company's business records. The evidence makes clear that in July of 2006, Dell conducted a telephone troubleshooting session with Jesia. When that session did not resolve issues that Plaintiff was experiencing with the Computers, a Dell service representative visited Plaintiff's office. Dell's business records indicate the date of the visit as July 13, 2006. At that visit, the Dell technician opened the Computers and showed the motherboards to Plaintiff and Jesia. The technician stated that Dell Optiplex computers, in general, were experiencing problems similar to those experienced by Plaintiff. He discussed specifically that the problems were caused by defective capacitors. While Plaintiff claims that he is not a computer

4

expert, and the court does not find otherwise, he did testify that the Dell technician told him that there was "an issue with the motherboard and capacitors." This is corroborated by the testimony of Jesia, who stated that "little things," inside the Computers, called "capacitors," had exploded.

II.     The Motion for Summary Judgment

As noted, the three causes of action that survived the motion to dismiss are those alleging violation of: (1) the Federal Magnuson Moss Warranty Act 15 USC § 2308(a)(c) ("MMWA"); (2) Section 2-314 of the New York Uniform Commercial Code ("UCC § 2-314"), and (3) Section 349 of the New York General Business Law ("Section 349"). While each of these claims has been held untimely, the court has not yet ruled on whether those claims can survive on the basis of equity and/or post warranty conduct. The present motion for summary judgment argues that they cannot. After outlining relevant legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I.     Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most

favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp.,

585 F.2d at 33.

II.  Disposition of the Motion

    A.  Legal Principles: Equitable Tolling

At the outset, the court makes clear that it adheres to its prior ruling holding that the warranties extended to Plaintiff have in no way been extended by attempts to repair the Computers. As set forth in this court's prior opinion:

> the court holds that Plaintiff's warranty claims accrued at the time of delivery of the computers in 2003. That is the date when the Optiplex computers with allegedly defective capacitors were delivered, and Plaintiff's knowledge of such defects is of no moment. Since Plaintiff's warranty claims were not commenced until seven years after delivery, they are not timely.

Statler, 775 F. Supp.2d at 482. The sole issue before the court is whether principles of equity can be applied to render Plaintiff's claims timely. The applicable law with respect to equitable principles that might toll Plaintiff's claims were set forth in this court's prior opinion and are restated briefly here.

Whether referred to as "equitable tolling," or "equitable estoppel," tolling is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay Plaintiff from commencing a lawsuit. Statler, 775 F. Supp. at 482; see generally Pearl v. City of Long Beach 296 F.3d 76, 82 (2d Cir. 2002); Chmiel v. Potter, 2010 WL 5904384 *9 (W.D.N.Y. 2010); Torre v. Columbia University, 1998 WL 386438 *6 (S.D.N.Y. 1998). Additionally, a Plaintiff seeking an equitable toll of the statute of limitations must show that Defendant's action rendered Plaintiff unable, despite his due diligence, to commence a timely action. Thus, in the context of this motion, Plaintiff must show at least a question of fact as to: "(1)

wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." Statistical Phone Philly v. NYNEX Corp., 116 F.Supp.2d 468, 482 (S.D.N.Y. 2000)(citations omitted).

Plaintiff's burden of establishing diligence is critical because it determines when the statue, even if tolled, begins to run. Thus, if a plaintiff can show defense wrongful conduct sufficient to invoke a toll, the statute of limitations will nonetheless being to run when "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.' " Statler, 775 F. Supp.2d at 482, quoting, Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir.1985).

When considering a plaintiff's diligence, "the issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit." Torre, 1998 WL 386438 *8. Ultimately, tolling can apply only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll. Chmiel, 2010 WL 5904384*9." Statler, 775 F. Supp.2d at 483.

B. Plaintiff Cannot Show Entitlement to Equitable Tolling

Plaintiff leased the Computers in 2003 and did not commence this action until August of 2010. When the motion to dismiss was before the court, it was "simply too early to tell," whether Plaintiff's warranty claims could be saved by equitable tolling. That is no longer the case. At the

this point in the proceedings the court holds, for the reasons set forth below, that Plaintiff has failed to uncover facts that allow equity to save his claims.

As the above referenced law makes clear, equity can toll the statute of limitations only upon a showing of: (1) wrongful conduct on the part of Defendants and (2) diligence on the part of Plaintiff. As to the former element, facts must be available to show that Defendant's conduct somehow concealed from Plaintiff his cause of action or worked to delay him from pursuing his claim. No such conduct is present here. Dell's conduct reflects nothing more that continued attempts, although unsuccessful, to repair Plaintiff's computers. In doing so, Dell acted pursuant to its warranty obligations. Such conduct cannot form the basis of any claim that statutes of limitation should be tolled. Indeed, a holding to the contrary would extend accrual of warranty statutes of limitations until the dates that a warranty expires. That is not the law. Moreover, no facts uncovered during discovery support the claim that Dell attempted to fraudulently conceal the Computers' defects. To the contrary, its 2005 publicly filed statement with the SEC revealed that Dell was aware of a component part defect that plagued its Optiplex line of computers. Additionally, Dell's technician openly acknowledged the capacitor defect to Plaintiff when replacing the motherboards in July of 2006.

Even if Plaintiff had come forward with evidence of wrongful conduct sufficient to invoke an equitable toll, this action would nonetheless be time-barred. This is because discovery has revealed clearly Plaintiff's lack of diligence in pursuing his claim. Plaintiff's dissatisfaction with the Computers began almost immediately after delivery. The July 2006 motherboard replacement, and discussions with the Dell technician as to the capacitor defect constitute more than sufficient

facts to allow Plaintiff to pursue claims alleging a defect, and thereby start the running of the statute of limitations. As noted, Plaintiff need not have been in possession of all information necessary to prevail in a lawsuit prior to commencement of an action. He need only have possessed information that would have allowed him to bring a lawsuit. Like those who commenced a similar lawsuit in 2007, further information would have been produced in the course of discovery. Contrary to Plaintiff's position, he was not precluded from commencing an action until discovery of the specific widespread defect that ultimately formed the basis of his cause of action. Thus, Plaintiff's argument that he was not required to commence his action until his 2010 "Eureka" moment, is without legal support. Although the date is arguably earlier, July of 2006 is the very latest date when Plaintiff was in possession of information that triggered the running of the statute of limitations, rendering this August 2010 action untimely.

C.  Claims Pursuant to General Business Law Section 349

Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute. Gaidon v. Guardian Life Ins. Co. of America, 727 N.Y.S.2d 30, 35 (2001); M & T Mortg. Corp. v. Miller, 2009 WL 3806691 *2 (E.D.N.Y. 2009). Such injury occurs when "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." Gaidon, 727 N.Y.S.2d at 35. Accrual is not dependent upon any date when discovery of the alleged deceptive practice is said to occur. M & T Mortg. Corp., 2009 WL 3806691 *2; In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 2007 WL 1601491 *14 n.121 (S.D.N.Y. 2007); Wender v. Gilberg Agency, 716 N.Y.S.2d 40, 41-42 (1st

Dep't. 2000).

With respect to accrual in this case, this court held, in the context of the motion to dismiss, that it is clear that the allegedly faulty capacitors were present in the computers purchased at the time of delivery in 2003. Thus, to the extent that Plaintiff's Section 349 claim was based upon the allegation that the deceptive practice was the shipping of computers with defective capacitors, that claim accrued in 2003. Since the court has held that Plaintiff has failed to establish any facts that might support equitable tolling, his Section 349, which accrued at the time of delivery of the Computers is time-barred.

The narrow question left open in the context of the motion to dismiss was whether Plaintiff could establish a separate Section 349 claim based upon the allegation that Dell's post-sale handling of his warranty claim amounted to deceptive conduct prohibited by the statute. The court holds that Plaintiff has failed to come forward with any post warranty conduct that would support a Section 349 cause of action. To the contrary, the record is replete with references to Dell's acknowledgment both to the public in general and Plaintiff in particular, as to the Computer's capacitor problems. As noted above, Plaintiff shows nothing more that Dell's continued unsuccessful attempts to repair the Computers. Such conduct cannot form the basis of a claim pursuant to Section 349.

D. <u>Requests to Amend and/or for Further Discovery</u>

Finally, the court rejects Plaintiff's requests to amend his complaint and/or for further discovery as to Dell's conduct. The facts showing Plaintiff's lack of diligence in pursuing his claims are so clear and uncontroverted any amendment would be futile. Any further discovery as to

Dell's conduct would be irrelevant.

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion and to close the file in this matter.

SO ORDERED.

                                      s/ L. D. Wexler
                                      LEONARD D. WEXLER
                                      UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        January 13, 2012